## QUADRANGLE PETROLEUM CO. v. Mc-CABE et al.

No. 15585—Opinion Filed Sept. 15, 1925.

**Trial—Demurrer to Evidence—Failure of Plaintiff's Evidence.**

Where plaintiff's evidence is not sufficient to support the material allegations of the petition, it is not error for the court to sustain a demurrer to the evidence and render judgment for the defendant.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Garfield County; James B. Cullison, Judge.

Action by Quadrangle Petroleum Company against J. L. McCabe et al. Judgment for defendants, and plaintiff brings error. Affirmed.

McKeever, Moore & Elam, for plaintiff in error.

F. Dumont Smith, W. W. Sutton, and H. J. Sturgis, for defendants in error.

Opinion by THREADGILL, C. In October, 1921, J. L. McCabe, as party of the first part, made a written contract with James E. Caldwell, as party of the second part, by which he sold to Caldwell a one-half interest in certain letters patent for producing and refining motor fuel. It was agreed that Caldwell was to pay him $10,-000, $1,000 in cash, $3,000 November 15, 1921, $3,000 January 1, 1922, and $3,000 February 1, 1922, and as a further consideration was to furnish such funds as were necessary to either build, lease, or establish a plant for the use of McCabe in demonstrating whether or not said process would produce the motor fuel in paying commercial quantities, the said Caldwell to be the sole judge as to the amount of the expenditures. If at any time the second party desired to abandon the demonstration or building or use of the plant furnished with the machinery and equipment, he could do so,

and, in such case, the first party was to keep the $10,000 and all the machinery and equipment furnished and the one-half interest conveyed was to be reconveyed to the first party. It was further agreed that McCabe was to have a salary of $300 a month while the contract was in force. If they sold the letters patent McCabe was to have $40.000 for his part and Caldwell $10,000 for his part, and any amount left was to be divided equally between them. Thereafter, on October 14, 1921, the said Caldwell assigned an undivided one-half interest in his part of said patent to the Quadrangle Petroleum Company, a corporation, in consideration that said company would fulfill his contract with McCabe. The company took the assignment and entered upon the work of fulfilling the contract. It paid the $10,000 and furnished the building and machinery and help for the experiments and developments of the proposed process of manufacturing motor fuel. In the meantime, about February 25, 1922, the principal stockholder, M. W. Truitt, died, and his widow and his brother, L. D. Truitt, became involved in a controversy and lawsuit over his stock in the company. It seems that three of the directors, D. M. Carey, Dan Stanley, and M. A. Mitchell, were friendly and favorable to the brother's side and M. C. McCaffery and H. C. McKeever favored the widow's side of the controversy. This caused a strife among the board of directors and steps were taken in the latter part of 1922 to dissolve the corporation and liquidate its assets. McCabe and Caldwell became discouraged and lost confidence in the company to carry out its part of the contract made with them, and on September 6, 1922, Caldwell demanded in writing that the company give up the contract and reassign to him its fourth interest in the letters patent. No action was taken upon this demand until December 15, 1922. A majority of the board of directors voted to reassign the said interest in the letters patent and give up the contract. The president of the company, H. C. McKeever, refused to execute the reassignment, and on December 30th, the board, by resolution, authorized the vice president to execute the assignment. This necessarily ended the work of J. L. McCabe under the contract with the company, and thereupon he made out his account for salary and expenditures, running from September 25, 1922, to December 19, 1922, in the sum of $4,686.96, and verified the same, and presented it to the company on January 5, 1923, and on January 13th the account was allowed by a

majority vote of the board of directors, and L. D. Truitt, who was secretary and treasurer of the company, issued the company's check to pay the claim, which was honored.

Thereafter, on January 22, 1923, a new board of directors was elected, and on February 7th this action was commenced to recover the $4,686.96. The petition alleged that the claim was illegal and fraudulent, that it was made and paid in pursuance of a conspiracy to defeat the property rights of Bertha M. Truitt, the widow of M. W. Truitt, deceased, as well as the rights of his minor child, and to cheat and to defraud the company. The petition further states that the claim is illegal because made after notice or demand of Caldwell September 6, 1922, to reassign the patent rights interest and give up the contract. The answers of the defendants deny the conspiracy and deny the acts of fraud alleged, and state that the claim was made in pursuance of the contract and was allowed and paid accordingly. The cause was tried to a jury. The plaintiff introduced its evidence showing the contract, the various meetings of the directors from June 23, 1922, to January 13, 1923, and something of the work and expenditures of the company and of McCabe in carrying out the contract, and the plaintiff offered to show the acts of the defendant, directors and of L. D. Truitt, in conspiracy against Bertha M. Truitt and her minor son, as the heirs of M. W. Truitt, which was not permitted by the court upon objection of defendants. There was no evidence offered to show that the account of $4,686.96 was not correct, or that it exceeded the amount fixed by the company for expenditures, or that it was unreasonable. The contention is that the company was not liable for the items of the account because they were made after the demand of Caldwell, September 6, 1922, to reassign to him the interest in the patent he had assigned to it. The defendants demurred to the evidence and the court sustained the same and rendered judgment in favor of the defendants, and the plaintiff brings the case here for review asking for a new trial.

The first contention made is that the evidence, as far as it was permitted to show, proves a conspiracy against the principal stockholder of the plaintiff, and if it had been permitted to introduce the evidence offered and the case had been submitted to the jury, they would have found either a conspiracy to spend the company's money unlawfully, or a violation of their trust as directors, and it would have been entitled to a recovery in some amount. Plaintiff

cites no authority to support this contention and we know of none. We have examined the evidence introduced and that which was offered and we cannot see where the claim sued for has any connection whatsoever with the controversy between L. D. Truitt and the widow of M. W. Truitt, deceased. If the claim was made according to the terms of the contract binding upon the parties, it was valid and should have been paid; if not so made, it was invalid and should not have been paid; and the demurrer to the evidence searches the record to determine the material issues as stated in the pleadings as well as the sufficiency of the evidence to prove the plaintiff's case, and we think the court was correct in holding that the conspiracy and fraud alleged had no connection with the claim sued on.

Plaintiff's second contention is, there was "a design on the part of D. M. Carey and J. L. McCabe to profit, the said Carey being a member of the board of directors and dealing with himself and voting for himself." We do not find any issue or evidence to support this contention. It would make no difference what profits were obtained by the company by unholy designs or otherwise, if McCabe's claim was a legal claim and not connected with such designs, it was McCabe's duty as a director to vote for its payment.

Plaintiff's third complaint is that "The evidence shows that Carey, Mitchell, and McCabe had tried to bring about a cancellation of this contract as early as June." We cannot see what difference this would make. It is admitted that the contract was not terminated at that time. It is not a question of what they tried to do, but what was done. The contract continued in full force and effect and McCabe continued his work under it till it was terminated as in the contract provided.

In the fourth place, plaintiff contends that the evidence shows that as early as June the plaintiff had spent all the money it should spend and had fulfilled its contract. We do not think so. The contract in the 6th and 8th paragraphs provides as follows:

"In the event if the second party shall at any time desire to abandon the experiment or the building or use of such a plant, then and in that event it shall be at his option to do so, the said first party retaining the said $10,000 above set out and so paid, and shall also, by proper assignment in writing, reassign to the said first party the undivided one-half interest which he received under this contract, and the assignment to be made of the same.

"It is further agreed that the said first party will make no contract with any person, firm, or corporation under said letters patent for the use of the same to either make experiments or to produce or manufacture motor fuel and that the said first party will give to said second party, his successor or assigns, his exclusive and entire time at a salary of $300 per month, in superintending the construction and operation of and experiments in a plant to be built, leased, or located at a place to be selected by second party, for the purpose of said experiments and production of said produce, the second party reserving the right, however, to control the expenditure of money appropriated for that purpose."

It is clear from these provisions that plaintiff's work was to continue and the expenses were to continue indefinitely to a successful development and production of the motor fuel, or at the option of the company, until it chose to stop the work, and at such time the company was to reassign its interest to Caldwell. The terms were definite and certain, and the evidence is not in conflict with the contract.

We do not think there was anything for the jury to pass on. The contract was not terminated on the part of the plaintiff till it ordered the work stopped and reassigned its interest in the letters patent to James E. Caldwell, which was not done until all the items of the account were paid, and the evidence introduced was not sufficient to show that the account paid was not a valid account. This case is rather remarkable in the fact that neither plaintiff nor defendants cite any authorities in support of their contentions. Both parties rely upon the record to sustain their respective contentions, and we think upon the whole record the appeal is without any merit, and the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 38 Cyc. p. 1547.